# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| WORLD MARKET CENTER VENTURE, LLC, | )<br>) |
| Plaintiff, | )<br>) |
| vs. | )   2:08-cv-01753-RCJ-GWF<br>) |
| TEXAS INTERNATIONAL PROPERTY ASSOCIATES, | )<br>)   **ORDER**<br>) |
| Defendant. | )<br>) |

This lawsuit involves Plaintiff's allegations that Defendant has engaged in trademark infringement, unfair competition, and cybersquatting under state and federal law by Defendant's registration and use of <lasvagasmarket.com> since February 2005. Before the Court is Plaintiff's Motion to Dismiss the Third, Fourth, and Fifth Claims for Relief of Defendant's Counterclaims (#46) for lack of standing to request cancellation of certain registered marks. For the following reasons, the Court GRANTS Plaintiff's Motion to Dismiss with leave to amend. Defendant may amend its counterclaims, and Plaintiff may amend the Complaint to remove mention of trademarks not otherwise at issue in this matter.

**I.   BACKGROUND**

Plaintiff World Market Center Venture, LLC, ("WMCV") is a Nevada limited liability company with its principal place of business in Las Vegas, Nevada. WMCV owns and operates World Market Center Las Vegas ("WMCLV"), which is a home and hospitality contract furnishings

1 showcase and trade show pavilion. (#3, Ex. 2, ¶ 3). When WMCLV is completed, it will be the
2 largest wholesale trade show complex in the world, a project that will ultimately cost approximately
3 $3 billion. (*See id.* at ¶¶ 4–6).

4 WMCV owns the mark WORLD MARKET CENTER LAS VEGAS, which it uses in
5 connection with trade shows, trade exhibitions, and conventions in the fields of home and hospitality
6 furnishings, furniture, home decor, and interior design. WMCV has continuously used its WORLD
7 MARKET CENTER LAS VEGAS mark since 2001. WMCV owns and uses certain variants of this
8 mark, including LAS VEGAS MARKET (U.S. Reg. No. 3,259,971; Reg. No. E0505062008-8), LAS
9 VEGAS FURNITURE MARKET (U.S. Reg. No. 3.164.222), LAS VEGAS DESIGN CENTER
10 (U.S. Ser. No. 77288182), and WMCV (U.S. Ser. Nos. 77288275, 77288267, 77288247, 77288285,
11 77288257, and 77288236; Reg. Nos. E0503642008-6, E0503682008-0, E0503742008-8, and
12 E0503562008-6). (#1 at 3–6).

13 The present case arises out of Defendant Texas International Property Associates's ("TIPA")
14 alleged infringing use of the LAS VEGAS MARKET mark. WMCV filed a federal application for
15 the mark LAS VEGAS MARKET on September 3, 2004, claiming use since April 2001. (#16 at 70).
16 On July 10, 2007, the U.S. Patent and Trademark Office ("PTO") approved the registration of the
17 LAS VEGAS MARKET mark (Reg. No. 3,259,971) on the basis of acquired distinctiveness. (#16
18 at 128). WMCV also has a Nevada state registration for the mark LAS VEGAS MARKET. (#3, Ex.
19 2 at ¶ 9). WMCV owns the domain name <lasvegasmarket.com>, which it uses to advertise its
20 goods and services. (#3, Ex. 2 at ¶ 9; Ex. 3).

21 On February 4, 2005, Defendant TIPA registered the domain name <lasvagasmarket.com>[1]

---

23 [1]There is, or course, no such city as "Las Vagas." The spelling of Defendant's website
appears to be a purposeful misspelling of "Las Vegas," a cybersquatting technique known as
24 "typosquatting," whereby a party creates a website with a URL similar to another website's
URL, differing by only one or two letters that are phonetically or typographically adjacent to
25 corresponding letters of the URL of the target website. The intent is to attract Internet users who

1  (the "Domain Name"). (#3, Ex. 4).  TIPA uses the Domain Name in connection with a website that
2  displays links to other websites related to Las Vegas activities. (#3, Ex. 5).

3  On December 12, 2008, WMCV filed its Complaint against TIPA for trademark
4  infringement, unfair competition, and cybersquatting (#1), as well as requests for a temporary
5  restraining order (#2) and a preliminary injunction (#3).  On December 17, 2008, the Court granted
6  the temporary restraining order, requiring the registrar to lock the Domain Name and ordering TIPA
7  to cease any use of Plaintiff's marks. (#8).  On January 9, 2009, TIPA filed a motion to dismiss
8  under Rules 12(b)(2), 12(b)(3), and 12(b)(5) of the Federal Rules of Civil Procedure. (#13).  The
9  Court granted the preliminary injunction and denied the motion to dismiss on March 30, 2009. (#34).

10  TIPA filed its Answer (#39) on June 19, 2009, including six counterclaims, each a claim for
11  cancellation of WMCV's federal or state trademarks.  The Third counterclaim is for cancellation of
12  LAS VEGAS FURNITURE MARKET (U.S. Reg. No. 3,259,971), and the Fourth and Fifth
13  counterclaims are for cancellation of LAS VEGAS DESIGN CENTER (U.S. Reg. No. 3,482,662).
14  Pending before the Court is Plaintiff's Motion to Dismiss the Third, Fourth, and Fifth Claims for
15  Relief of Defendant's Counterclaims (#46) for lack of standing to request cancellation.  WMCV
16  argues that TIPA has no standing to counterclaim for cancellation of these marks because WMCV
17  has not claimed TIPA is infringing them.  Moreover, TIPA has claimed no interest in the marks
18  beyond that of the general public, and it has not claimed it will be damaged by WMCV's registration

---

accidentally mistype the web address of the target website.  For example, the website for a company with URL "hanssens.com" might be typosquatted by someone creating a website called "hansens.com" or "hanssons.com"(phonetic typosquatting), or even "hanssems.com" or "hanssebs.com" (typographic typosquatting).  This is different from direct cybersquatting, where a party will register a URL with the precise name of the target entity, in our case "hanssens.com."  The claim in the present case is that Defendant is infringing Plaintiff's trademark by phonetically typosquatting on lasvegasmarket.com via the Domain Name, lasvagasmarket.com.  The Domain Name differs from Plaintiff's website only by one vowel, resulting in a nonexistent word that is phonetically similar enough to Plaintiff's trademark to attract poor-spelling Internet users who intend to visit Plaintiff's website.

1  of the marks. TIPA argues that WMCV "bestowed standing" upon TIPA to counterclaim to cancel
2  these marks when WMCV included claims in its Complaint that it owned these other marks in
3  connection with the mark that it claims TIPA infringed.

4  **II.     RULE 12(b)(6) STANDARD**

5  Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the
6  claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what
7  the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957).
8  Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that fails
9  to state a claim upon which relief can be granted. A motion to dismiss under Rule 12(b)(6) tests the
10 complaint's sufficiency. *See North Star Int'l. v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir.
11 1983). When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim,
12 dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally
13 cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544,
14 555 (2007). In considering whether the complaint is sufficient to state a claim, the court will take
15 all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL*
16 *Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). The court, however, is not required to
17 accept as true allegations that are merely conclusory, unwarranted deductions of fact, or
18 unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).
19 Plaintiffs must "nudge[] their claims across the line from conceivable to plausible . . . ." *Twombly*,
20 550 U.S. at 570.

21 "Generally, a district court may not consider any material beyond the pleadings in ruling on
22 a Rule 12(b)(6) motion . . . However, material which is properly submitted as part of the complaint
23 may be considered on a motion to dismiss. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896
24 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citations omitted). Similarly, "documents whose contents are
25 alleged in a complaint and whose authenticity no party questions, but which are not physically

1  attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without
2  converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d
3  449, 454 (9th Cir. 1994).  Moreover, under Federal Rule of Evidence 201, a court may take judicial
4  notice of "matters of public record." *Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir.
5  1986).  Otherwise, if the district court considers materials outside of the pleadings, the motion to
6  dismiss is converted into a motion for summary judgment. *See Arpin v. Santa Clara Valley Transp.*
7  *Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

8  If the court grants a motion to dismiss a complaint, it must then decide whether to grant leave
9  to amend.  The court should "freely give" leave to amend when there is no "undue delay, bad faith[,]
10 dilatory motive on the part of the movant . . . undue prejudice to the opposing party by virtue of .
11 . . the amendment, [or] futility of the amendment . . . ." Fed. R. Civ. P. 15(a); *Foman v. Davis*, 371
12 U.S. 178, 182 (1962).  Generally, leave to amend is only denied when it is clear that the deficiencies
13 of the complaint cannot be cured by amendment. *See DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d
14 655, 658 (9th Cir. 1992).

15 **III.   ANALYSIS**

16 In order to have standing,  petitioner for cancellation need not prove actual damage, but only
17 the likelihood of damage from the continuing registration of the mark. 3 McCarthy, Trademarks §
18 20:46, at 20-109 (4th ed. 2009) (citing *Golden Gate Salami Co. v. Gulf States Paper Corp.*, 332 F.2d
19 184, 188 (C.C.P.A. 1964)).  There must be a "personal commercial interest, rather than the interest
20 of a mere intermeddler." *Golden Gate Salami Co.*, 332 F.2d at 188.  If a party claiming cancellation
21 "does not plead facts sufficient to show a personal interest in the outcome beyond that of the general
22 public, the case may be dismissed for failure to state a claim. *Lipton Indus., Inc. v. Ralston Purina*
23 *Co.*, 670 F.2d 1024, 1028 (C.C.P.A. 1982) (citing *Sierra Club v. Morten*, 405 U.S. 727 (1972)).  A
24 party attempting cancellation must "demonstrate a real interest in the proceedings." *Id.* (citing
25 *Universal Oil Prods. Co. v. Rexall Drug & Chem. Co.*, 463 F.2d 1122 (C.C.P.A. 1972)).  The *Lipton*

court identified many contexts in which a real interest could be shown, supporting standing: importation of products deterred by a registration, use of copyrighted appearance of an item, pecuniary interest of trade association, prior registration but not priority in use, protection of subsidiary's mark, descriptive use of term in registered mark, and advertising emphasis of American origin. *Id.* at 1029 (citations omitted).

WMCV argues, "It is not apparent from the Counterclaim how TIPA believes it will be damaged by WMCV's registration of the LAS VEGAS FURNITURE MARKET or LAS VEGAS DESIGN CENTER marks." (#46 at 6:16–18). WMCV is correct that this is the showing TIPA must make. In the context of a motion to dismiss, TIPA must at least make a plausible claim to this effect, not simply a conceivable claim. *Twombly*, 550 U.S. at 570.

TIPA argues that WMCV "bestowed standing on TIPA" by suing TIPA for infringement and listing the challenged marks in the Complaint as marks that were being infringed, giving TIPA a "real interest" in the continued registration of the marks. (#49 at 5:14–24). TIPA cites to *Triple-I Corp. v. Hudson Assocs. Consulting, Inc.* for the proposition that merely being sued for infringement, or even having been threatened with suit, is sufficient to support standing to counterclaim for cancellation. No. 06-2195-EFM, 2009 WL 2162513, at *3 (D. Kan. July 17, 2009) ("Triple-I's belief that it will be damaged due to the KMPro parties threat of litigation is sufficient to assert a 'real interest.'"). TIPA is correct that being sued for infringement is sufficient to support standing for a counterclaim for cancellation.

WMCV argues, however, that TIPA is counterclaiming to cancel trademarks upon which TIPA is not in fact being sued, but which are only related to the WMCLV, and that "TIPA claims no commercial interest in LAS VEGAS FURNITURE MARKET or LAS VEGAS DESIGN CENTER and demonstrates no personal interest in the registration of these marks beyond that of the general public." (#46 at 6:27–7:2). Although WMCV included a list of WMCLV-related marks in its Complaint and did not claim that TIPA was only infringing the LAS VEGAS MARKET mark,

1  it is clear from the complaint identifying the allegedly infringing Domain Name which mark or
2  marks were alleged to have been infringed.  The marks against which TIPA now counterclaims for
3  cancellation are all listed in WMCV's Complaint against TIPA (#1 at 5–8), but this is not enough
4  to find that Plaintiff has claimed these marks are being infringed.  Plaintiff has made no such claim.
5  Therefore, TIPA does not have standing to counterclaim to cancel the marks identified in the Third,
6  Fourth, and Fifth Claims for Relief, with leave to amend.

7      WMCV also argues that if the challenged counterclaims are not dismissed, that it should be
8  given leave to amend to remove references to the LAS VEGAS FURNITURE MARKET and LAS
9  VEGAS DESIGN CENTER marks.  TIPA's only claim to a real interest in the two marks mentioned
10 in the Third, Fourth, and Fifth Counterclaims is based on having been sued over them.  Therefore,
11 WMCV is granted leave to amend the Complaint to clarify which marks are allegedly infringed and
12 to remove references to other marks.

## CONCLUSION

14     IT IS HEREBY ORDERED that Plaintiff's Motion to Dismiss (#46) is GRANTED, with
15 leave to amend.  Plaintiff may also amend the Complaint to remove mention of trademarks not
16 otherwise at issue in this matter and clarify which trademarks are alleged to have been infringed.

17     DATED:     October 14, 2009

_____
Robert C. Jones
United States District Judge